## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| DEMONDRAY BROOKS, | CASE NO. 1:23-CV-2123-JRK |
| Petitioner, | JUDGE JAMES R. KNEPP, II |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN HAROLD MAY,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

Representing himself, Demondray Brooks, a prisoner in state custody, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and referred the matter to me to prepare a Report and Recommendation. (Non-document entry of Oct. 31, 2023). On February 26, 2024, then-Respondent Warden Jay Forshey, as Warden of the Noble Correctional Institution (hereinafter, the State), filed the Return of Writ (ECF #8) with the state-court record and transcripts (ECF #8-1, 8-2). On May 23, 2024, Mr. Brooks submitted his Traverse. (ECF #7).

---

[1]      When Mr. Brooks filed his petition, he was incarcerated at Noble Correctional Institution, but was later transferred to Mansfield Correctional Institution. (ECF #9). Harold May is the Warden of that facility. *See Mansfield Correctional Institution*, *Ohio Dept. of Rehab. & Corr.*, http://drc.ohio.gov/about/facilities/mansfield-correctional (last accessed June 18, 2025). Accordingly, under Fed. R. Civ. P. 25(d) and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules), I automatically substitute Warden May as Respondent.

Mr. Brooks raises two grounds for relief. For the reasons below, I recommend the District Court **DENY** Ground One as without merit, **DISMISS** Ground Two as not cognizable, and **DISMISS** the petition. I further recommend the District Court **DENY** a certificate of appealability (COA).

## PROCEDURAL HISTORY

### A.    State court factual findings

The Ohio Court of Appeals, Fifth Appellate District, summarized the facts here on direct appeal. These factual findings are presumed correct unless Mr. Brooks offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). The Fifth District determined:

> {¶2} On January 7, 2022, the Richland County Grand Jury returned an Indictment charging Brooks with: Count 1, Failure to Comply with an Order or Signal of a Police Officer causing a substantial risk of serious physical harm to persons or property; Count 2, Failure to Comply with an Order or Signal of a Police Officer while fleeing immediately after the commission of a felony; Count 3, Trafficking in a Fentanyl-Related Compound in the vicinity of a juvenile in an amount equal to or greater than 5 grams but less than 10 grams; Count 4, Possession of Fentanyl in an amount equal to or greater than 5 grams but less than 10 grams; Count 5, Trafficking in Cocaine in the vicinity of a juvenile; Count 6, Possession of Cocaine in an amount equal to or exceeding 5 grams but less than 10 grams; Count 7, Aggravated Trafficking in Drugs, Methamphetamine; Count 8, Aggravated Possession of Drugs, Methamphetamine; Count 9, Trafficking in Drugs, Clonazepam, a Schedule IV drug, in the vicinity of a juvenile in an amount less than bulk amount; Count 10, Possession of Drugs, Clonazepam, a Schedule IV drug, with a previous conviction of a drug abuse offense; Count 11, Having Weapons While under a Disability with a previous conviction for a drug trafficking offense; Count 12, Having Weapons While under a Disability with a previous conviction for a felony of violence; Count 13, Assault - J.N.; Count 14, Assault - K.T; and Count 15, Criminal Damaging or Endangering with a substantial risk of serious harm to the property of M.P.

> {¶3} On November 25, 2021, Brooks filed a Demand for Discovery.

> {¶4} On March 24, 2022, Brooks filed a Motion to Continue the trial date. On April 6, 2022, Brooks filed a Motion to Dismiss/Suppress Counts 1, 2, 11 & 12 of the

2

Indictment. On April 13, 2022, the trial court filed a Notice of Hearing scheduling a hearing on Brooks' motion to dismiss/suppress for April 22, 2022. On April 14, 2022, the trial court filed a Judgment Entry granting Brooks' motion to continue and scheduled a new trial date of May 16, 2022. On April 28, 2022, the trial court filed a Judgment Entry overruling Brooks' motion to dismiss/suppress.

{¶5} On May 3, 2022, counsel for Brooks filed a motion to withdraw. By Judgment Entry filed May 4, 2022, the trial court granted the motion to withdraw and scheduled a final pre-trial for May 12, 2022, and a jury trial for May 16, 2022.

{¶6} On May 6, 2022, Brooks' new counsel filed a Demand for Discovery, a Demand for a Bill of Particulars, and a Demand for Testimony. On May 12, 2022, Brooks filed a motion to continue the trial, in which he noted that he had received discovery from the state on May 10, 2022.

{¶7} On May 23, 2022, Brooks filed a pro se motion to dismiss for a violation of his right to a speedy trial. On June 9, 2022, Brooks filed a pro se motion to discharge his counsel and represent himself.

{¶8} By Judgment Entry filed June 15, 2022, the trial court granted Brooks' motion to continue the trial date. The trial court tolled time and scheduled a new trial date for July 18, 2022.

{¶9} On June 24, 2022, Brooks, through counsel, filed a Motion to Dismiss alleging a violation of his right to a speedy trial.

{¶10} On July 15, 2022, the trial court held a hearing on Brooks' motion to dismiss. Sergeant Beau James of the Richland County Sheriff's Office, Corrections Division testified that Brooks has been in jail since his arrest on the present charges on November 2, 2021. On the day of his arrest, a holder was placed on Brooks by Morrow County for a Failure to Appear for a misdemeanor charge.

{¶11} The trial court took the motion to dismiss under advisement and next addressed Brooks' request to proceed pro se. Brooks informed the court that he decided not to represent himself. After plea negotiations, the trial judge orally overruled Brooks' motion to dismiss. Thereafter, the state amended Count 3 of the Indictment to remove the "in the vicinity of a juvenile" language thereby making the offense a felony of the third degree. The trial court permitted Brooks to plead "No Contest" to Counts 1, 2, Count 3 as amended, Counts 7, 11, 13 and Count 15. Brooks stipulated to a guilty finding by the trial judge. The trial court imposed the agreed upon sentence of 8.5 years as follows: Count 1: 36 months; Count 3: 36 months; Count 7: 12 months, Count 11: 18 months, to be served consecutively to

each other but concurrently with Count 13: 6 months, concurrent to Count 15: 6 months.

(ECF #8-1 at PageID 184-87 (citations and footnote omitted); *see also State v. Brooks*, No. 2022 CA 0055, 2023 WL 3455618, at *1-2 (Ohio Ct. App. May 15, 2023), *appeal not allowed*, 216 N.E.3d 702 (Ohio 2023) (table)).

## B.    Direct appeal

On August 17, 2022, through appointed counsel, Mr. Brooks timely appealed to the Fifth District. (ECF #8-1 at PageID 110-11). There he, asserted a single assignment of error: "The trial court erred in denying Appellant's motion to dismiss for failure to grant him a speedy trial." (ECF #8-1 at PageID 115).

On November 21, 2022, Mr. Brooks filed a Motion for Leave to Proceed Pro Se, claiming his appointed counsel had willfully failed to communicate with him. (*Id.* at PageID 140). On February 10, 2023, the Fifth District discharged Mr. Brooks' appointed appellate counsel and allowed Mr. Brooks to represent himself. (*Id.* at PageID 150). On March 9, 2023, Mr. Brooks filed an Appellant's Brief raising the same assignment of error: "The trial court erred in denying Appellant's motion to dismiss for failure to grant him a speedy trial." (*Id.* at PageID 155). After the State responded (*id.* at PageID 170-82), Mr. Brooks did not file a Reply Brief. The Fifth District affirmed on May 15, 2023. (*Id.* at PageID 183-93).

On June 29, 2023, Mr. Brooks (through new counsel) timely appealed to the Supreme Court of Ohio. (*Id* at PageID 194-95). There, he raised a single proposition of law: "For purposes of computing time under R.C. 2945.71(A), (B), (C)(2), and (D), each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." (*Id.* at PageID

4

198). On September 12, 2023, the Supreme Court of Ohio declined to hear his appeal. (*Id.* at

PageID 211).

## FEDERAL HABEAS PETITION

Before this Court, Mr. Brooks raises two grounds for relief:

**Ground One:** The trial court denied the petitioner his 6th Amendment rights to a
speedy trial.

**Supporting Facts:**

> Nov. 2, 2021   0       Arrest, counting starts Nov. 3
>
> Jan. 25, 2022   84      Demand for discovery filed by Brooks/no reply by
> State
>
> Mar. 24, 2022  142     Motion to continue jury by Brooks. No tolling events
> stopped the running of time prior to March 24th.

**Ground Two:** The State of Ohio denied Petitioner his obligatory rights to due
process under the 5th and 14th Amendments.

**Supporting Facts:** The State of Ohio denied Petitioner his rights to due process by
not following the plain language of speedy trial statute.

(ECF #1 at PageID 5, 7).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Brooks'

habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts

are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier

to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v.*

*Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-

court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v.*

*Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-

5

explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable in light of the evidence presented in state court. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### FEDERAL HABEAS REVIEW OF STATE LAW CLAIMS

Federal habeas review is limited to claims involving federal constitutional rights. In other words, federal habeas review is available only for claims that "challenge the legality of [the petitioner's] custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Stated otherwise: "The writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

Federal habeas review is generally not available to decide whether a state court complied with state law or state procedural requirements. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal habeas court "does not function as another state appellate court to review a state court's interpretation of its own law or procedure." *Id.* Instead, a federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

A petitioner cannot justify habeas relief by simply asserting that a state-law error violates the federal constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). But habeas relief may be available if an error of state law made the criminal process "fundamentally unfair." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Id.*

## ANALYSIS

In Ground One, Mr. Brooks asserts he was denied the right to a speedy trial under the Sixth Amendment. (ECF #1 at PageID 5). In Ground Two, he claims the State violated his due process rights by "not following the plain language of [Ohio's] speedy trial statute." (*Id.* at PageID 7). The State contends the claims are meritless. (ECF #8 at PageID 55). I conclude that Ground One has no merit and that Ground Two is not reviewable in this Court.

**A.** **Ground One lacks merit because the eight-month delay in Mr. Brooks' trial was not contrary to, nor did it involve, an unreasonable application of clearly established federal law.**

The Sixth Amendment guarantees a defendant a "speedy and public trial." U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514 (1972). In *Barker*, in lieu of establishing a set number of days that constitutes a violation of the speedy trial right, the Supreme Court established a balancing test that weights the parties' conduct to assess whether a speedy trial violation has occurred based on the delay between the earlier of the date of arrest or indictment and the date of trial. *Id.* at 407 U.S. at 523, 530. Under this test, courts consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Id.* at 530; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992).

To enforce the federal constitutional right to a speedy trial in Ohio, the legislature enacted Revised Code §§ 2945.71, *et seq.*, that Ohio courts deem as implementing the federal constitutional speedy trial requirement. *Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011) (citing Ohio case law). Under those provisions, a person charged with a felony must be brought to trial within 270 days after arrest and, for purposes of computing time, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." Ohio Rev. Code §§ 2945.71(C)(2) and (E). Thus, a person who remains in jail only on the pending charge must be brought to trial within 90 days of his arrest. Section 2945.72 provides instances in which the time limit for bringing the defendant to trial may be paused or "tolled."

Mr. Brooks first asserted a speedy trial claim in his motion to dismiss in the trial court, arguing he was not brought to trial within the statutorily prescribed time. (ECF #8-1 at PageID 96). At a hearing, the trial court heard testimony that Mr. Brooks was held on the charges in the case

before the trial court *and* on a holder from another court. (*Id.* at PageID 99). Citing state case law interpreting Ohio's statutory speedy trial provisions, the trial court determined Mr. Brooks was not entitled to the triple-count provision under Revised Code § 2945.71(E) because he was held on the pending counts and on a holder from another court. (*Id.* at PageID 99-100). On direct appeal, Mr. Brooks claimed the trial court erred in denying his motion to dismiss on speedy trial grounds. (*Id.* at PageID 159-66). The Fifth District disagreed:

> {¶14} Speedy trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. "The statutory speedy trial provisions, R.C. 2945.71 *et seq.*, constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state."

> \* \* \*

> **Issue for appellate review:** ***Whether the trial court permissibly extended the trial date beyond the R.C. 2945.71 time prescriptions***

> {¶17} Brooks specifically contends dismissal of the indictments in the case sub judice was required on the grounds that he was not brought to trial within ninety days under the "triple-count" provision of R.C. 2945.71(E). Brooks argues that the decision in *State v. McDonald*, 48 Ohio St.2d 66, 357 N.E.2d 40 (1976) was wrongly decided. Specifically, Brooks contends that R.C. 2945.71(E) does not contain any language that the accused be held in jail "solely" on the pending charge in order to be entitled to the triple-count provisions.

> {¶18} A person charged with a felony shall be brought to trial within 270 days after the person's arrest or the service of summons. In addition, the first day is excluded from the count. Accordingly, it is Brooks' contention that the state had until Tuesday, February 1, 2022, to bring Brooks to trial.

> {¶19} The statutory provision commonly referred to as the "triple count" provision, R.C. 2945.71(E), reads as follows,

>> (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail *on the pending charge* shall be counted as three days.

10

This division does not apply for purposes of computing time under division (C)(1) of this section.

Emphasis added. The Ohio Supreme Court has held that the triple count provision only applies when the person is being held in jail in lieu of bail solely on the pending case.

{¶20} Upon review of the record, we find that competent, credible evidence supports the trial court's conclusion that Brooks was not being held in the Richland County jail solely on the underlying charges in the case sub judice. Unrefuted testimony was presented that a holder was placed upon Brooks by Morrow County on November 2, 2021. We hold the existence of the detainer from Morrow County would alone equate to Brooks being held on other charges for the purposes of *McDonald, supra*. To be held in jail on "the pending charge" can only be interpreted as meaning that "but for" the pending charge the defendant could not be held in jail. In the case at bar, had Brooks posted bond on the pending charges, he would not have been released from jail because of the holder placed on him by Morrow County. Richland County was informed that Morrow County had an active warrant for Brooks and they intended to come and get Brooks. Therefore, Brooks was not held in jail only because of the charges in the case at bar. Hence, we conclude the trial court properly denied the application of the triple-count provision of R.C. 2945.71(E) under the facts of this case.

{¶21} Brooks' appeal to this Court to reverse or ignore the Ohio Supreme Court's decision in *McDonald* is untenable. Article IV of the Ohio Constitution designates a system of "superior" and "inferior" courts, each possessing a distinct function. The Constitution does not grant to a court of common pleas or to a court of appeals jurisdiction to reverse or vacate a decision made by a superior court.

(ECF #8-1 at PageID 188-90; *see also Brooks*, 2023 WL 3455618, at *3-4) (citations and footnotes omitted).

The Fifth District expressly adjudicated Mr. Brooks' claim in terms of state law. In other similar cases, this Court has concluded that "a claimed violation of Ohio's statutory speedy trial laws is not necessarily a violation of the federal constitutional right to a speedy trial, nor does an alleged violation of Ohio's speedy trial statute present a cognizable federal habeas claim." *Phillips v. Schweitzer*, 2020 WL 9889893, at *9 (N.D. Ohio Nov. 10, 2020); *see also Norris*, 146 F.3d at 328 ("It is especially inappropriate for a federal habeas court to set aside a state court's ruling on an issue of

state law where, as in the present situation, Ohio's appellate courts on direct appeal have already found appellant's claim of his statutory right to a speedy trial to be meritless."); *accord Anderson v. Warden, Lebanon Corr. Inst.*, No. 1:18-CV-149, 2019 WL 3245326, at *6 (S.D. Ohio Apr. 30, 2019) ("[B]ecause the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treatises of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy trial statute or state case-law interpreting the Ohio statute."), *report and recommendation adopted*, 2019 WL 2502796 (S.D. Ohio June 17, 2019).

Both parties concede the Fifth District's decision decided Mr. Brooks' federal constitutional claim on its merits, and so it must be reviewed under the deferential AEDPA standard. (ECF #8 at PageID 53; ECF #11 at PageID 297). Precedent from the Supreme Court and the Sixth Circuit confirm this view. In *Harrington*, the Supreme Court stated, "When the federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law principles to the contrary." 562 U.S. at 99. In a similar case where the court of appeals applied Ohio's speedy trial provisions, the Sixth Circuit explained:

> the mere fact that the state court of appeals applied its own 270-day limit in determining whether a speedy trial violation occurred does not make applicable the exception in *Harrington*, especially considering that Ohio courts regard the state's speedy trial scheme as an implementation of the federal constitutional guarantee to a speedy trial.

*Brown*, 656 F.3d at 329. In accordance with *Harrington* and *Brown*, this court must presume the Fifth District decided Mr. Brooks' federal speedy trial claim on the merits, warranting the application of AEDPA deference.

As stated above, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). The Sixth Circuit has explained how the "contrary to" prong is not applicable in cases where a state court applies Ohio's 270-day rule to determine whether the delay in bringing a defendant to trial violated his right to a speedy trial:

> Although the Ohio Court of Appeals applied a 270-day rule to determine whether the delay in bringing Brown to trial violated his right to a speedy trial, this process does not violate clearly established federal law. The Supreme Court laid out a balancing test in *Barker* for determining whether a defendant's speedy trial right has been violated, and the Ohio Court of Appeals did not explicitly address the factors outlined in *Barker*. But AEDPA does not require that a state court strictly apply a federal test, as long as the court does not apply any test or standard that is contrary to federal law. In fact, the Supreme Court has explained that the use of the word "contrary," which "is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed,'" in the text of 28 U.S.C. § 2254(d) "suggests that the state court's decision must be substantially different from the relevant [Supreme Court] precedent." That is simply not the case here.
>
> Ohio's procedure for determining whether a speedy trial violation has occurred, by applying the 270-day limit, is not "substantially different" from the *Barker* analysis, and can be seen as merely the state's method of applying that Supreme Court precedent in a more structured manner. The Supreme Court in *Barker* refused to establish a set number of days constituting a violation of the speedy trial right, stating that "such a result would require [the] Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which [it] should confine [its] efforts." However, the Court recognized that "[t]he States . . . are free to prescribe a reasonable period consistent with constitutional standards," and this is exactly what Ohio has done. Moreover, Ohio courts consider the speedy trial provisions outlined in Ohio Rev. Code § 2945.71 *et seq.* to be "coextensive" with the Sixth Amendment's requirement, even stating that "the speedy trial statutes implement the constitutional guarantee of a public speedy trial." Though this fact alone is not sufficient to establish that the application of Ohio's 270-day limit is not contrary to federal law, it is instructive on this point.

Further examination of how Ohio's speedy trial statutes are applied demonstrates that they are not contrary to federal speedy trial law. Ohio Rev. Code § 2945.72 tolls the amount of time within which an accused must be brought to trial—essentially attributing the delay to the accused—in the following situations:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

(F) Any period of delay necessitated by a removal or change of venue pursuant to law;

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.

In every other scenario, the amount of time the defendant is held counts toward his or her speedy trial clock. This provision thus takes into account many of the considerations behind the second and fourth *Barker* factors, *i.e.*, the reason for the delay and the prejudice to the defendant. The remaining factors, the length of the delay and the defendant's assertion of his right, are likewise accounted for in Ohio's

14

time limits for bringing an accused to trial, Ohio Rev. Code § 2945.71, and through
its requirement that a defendant bring a motion to discharge on speedy trial grounds
at trial, Ohio Rev. Code § 2945.73(B). In addition, the Ohio courts have recognized
that "there may be situations wherein the statutes do not adequately afford the
protection guaranteed by the federal and state constitutions, in which case it is [their]
duty to see that an accused receives the protection of the higher authority." Thus,
any time an Ohio court reviews the implementation of a speedy trial statute, it is
guided not just by those provisions, but also by the dictates of the Sixth Amendment
whether or not it expressly applies the factors laid out in *Barker*.

The mere fact that the Ohio Court of Appeals did not explicitly follow each of the
rules laid out by the Supreme Court in applying the *Barker* factors does not mean
that its determination is substantially different from the relevant Supreme Court
precedent. This is especially true considering that *Barker* does not set forth a strict
formula for determining if a speedy trial violation has occurred, but instead calls for
the weighing of a number of factors. Brown argues that the Supreme Court has
rejected quantifying into a number of days or months a specific amount of time
necessary to establish a speedy trial violation. However, as previously noted, the
Court has recognized that while it is inappropriate for that court to establish such
time limits, there is no problem with the state legislatures doing so as long as they
are reasonable.

At oral argument, Brown also pointed to the fact that Ohio's speedy trial provision
treats sua sponte continuances differently than the Supreme Court did in *Barker*, but
this minor difference does not make Ohio's approach, which was followed by the
state court of appeals here, contrary to federal law. Ohio tolls Brown's 270-day limit
for any reasonable continuance while the Court in *Barker* stated that "[a] more
neutral reason [for delay] such as negligence or overcrowded courts should be
weighted less heavily but nevertheless should be considered since the ultimate
responsibility for such circumstance must rest with the government rather than with
the defendant." This consideration does not have a large impact on the weighing of
the *Barker* factors, as the Court itself recognizes that such reasons for delay should be
given less weight even though they should be weighed against the state. Further,
although these standards might differ in some respects, they are not substantially
different, as one can envision scenarios in which a continuance will be treated the
same under both. Ohio's manner of looking at the reason for the delay is thus not
contrary, or diametrically opposed, to federal precedent.

*Brown*, 656 F.3d at 330-32 (cleaned up). This reasoning suffices to show that Ohio's statutory

speedy trial analysis is not substantially different from the *Barker* analysis and thus in Mr. Brooks'

case did not result in an adjudication that was contrary to Supreme Court precedent.

Having determined the Fifth District's decision was not contrary to federal law, I now analyze the *Barker* factors to determine whether the Fifth District unreasonably applied federal law in finding Mr. Brooks' speedy trial rights were not violated. A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. Courts on federal habeas review are not concerned with whether the state court ruled erroneously or incorrectly, but rather whether the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004). To satisfy this high bar, even clear error will not suffice. *Lockyer*, 538 U.S. at 75-76. Rather, a habeas petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington*, 562 U.S. at 103.

Explained above, the four *Barker* factors are the length of the delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant. 407 U.S. at 530. No single factor is "a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial," but instead they "are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. I discuss each in turn.

**Length of Delay.** The first factor, length of the delay, acts to trigger a speedy trial analysis if the defendant alleges the interval between the accusation and trial has crossed a threshold dividing

ordinary from presumptively prejudicial delay. *Doggett*, 505 U.S. at 651-52; *accord United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) ("The first factor is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases."). The length of delay also serves secondarily "as a measure of the severity of the prejudice suffered by an accused." *Rice v. Warden, Warren Corr. Inst.*, 786 F.App'x 32, 34 (6th Cir. 2019). Generally, the Sixth Amendment right to speedy trial attaches at the earlier of the defendant's arrest or indictment. *See United States v. Marion*, 404 U.S. 307, 320 (1971) ("it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment"); *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). "A delay that approaches one year is 'presumptively prejudicial,' and triggers the speedy trial analysis," *United States v. Flowers*, 476 F.App'x 55, 60 (6th Cir. 2012) (citing *Doggett*, 505 U.S. at 562), but the determination of the length of delay that triggers the speedy trial analysis is necessarily dependent on the peculiar circumstances of the case, *Barker*, 407 U.S. at 530-31. For instance, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. "'[C]ustomary' delays during litigation—such as a five-month delay—automatically pass muster under the Sixth Amendment." *Doggett*, 505 U.S. at 652; *see Brown v. Romanowski*, 845 F.3d 703, 713 (6th Cir. 2017). Sixth Circuit case law suggests the approximately eight-month delay Mr. Brooks faced is not presumptively prejudicial. *See United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) (noting that a ten-month delay "is likely right at the line to trigger an analysis of the remaining factors"); *United States v. McPherson*, No. 2:08CR38, 2009 WL 2146360, at *3 (E.D. Tenn. July 14, 2009) (delay of nine months does not "approach" one year so as to trigger

presumption of prejudice); *United States v. Gardner,* 488 F.3d 700, 719 (6th Cir. 2007) (finding that nine-month delay is not uncommonly long and is insufficient to warrant further consideration of the remaining *Barker* factors); *United States v. Cope,* 312 F.3d 757, 778 (6th Cir. 2002) (delay of eight months and three weeks was not presumptively prejudicial).

In this case, there are some facts in the state court record that describe the nature and circumstances of the case. Mr. Brooks was arrested on November 2, 2021 (ECF #8-2 at PageID 234) and indicted on January 7, 2022 (ECF #8-1 at PageID 61-65). The trial court established the following at the change of plea and sentencing hearing: Police were dispatched for an alleged assault and attempted to stop a Chevy Malibu matching the description of the suspect's vehicle; Mr. Brooks fled, ultimately taking the car airborne and crashing atop another parked car, causing damage to another vehicle in the process; Mr. Brooks' 15-year-old son was in the car with him at the time; and a search of Mr. Brooks' vehicle revealed a gun he was not allowed to possess and several different drugs in amounts suggesting distribution rather than possession. (*Id.* at PageID 272-74). He entered his conditional guilty plea to six of the fifteen charges on July 15, 2022, little more than eight months after the date of his arrest. (*See id.* at PageID 228). Neither Mr. Brooks nor the State address this threshold issue. Out of caution, I will assume without deciding that the delay is presumptively prejudicial and address the remaining *Barker* factors.

**Reason for the Delay.** The second factor is the government's justification for the delay. *Barker,* 407 U.S. at 531. Deliberate attempts to delay the trial to hamper the defense should be weighted heavily against the government, whereas more neutral reasons such as negligence or unexplained delay should be weighted less heavily against the government. *Id.* Because "pretrial delay is often both inevitable and wholly justifiable," *Doggett,* 505 U.S. at 656, the question is not

whether there is delay, but whether the delay is *unreasonable*. Courts must also consider whether some of the delay is attributable to the defendant. *United States v. Bass,* 460 F.3d 830, 837 (6th Cir. 2006). *Barker* does not require courts to "search for a blameless party," *Wilson v. Mitchell,* 250 F.3d 388, 395 (6th Cir. 2001), but to determine "whether the government or the criminal defendant is more to blame for [the] delay," *Doggett,* 505 U.S. at 651. Only "those periods of delay attributable to the government or the court are relevant to [a defendant's] constitutional claim." *United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000).

Approximately two months passed between Mr. Brooks' arrest in November 2021 and the indictment on January 7, 2022. (*See* ECF #8-1 at PageID 61). There is no indication the delay between the arrest and indictment was intended to hamper Mr. Brooks' defense or that it was unreasonable. On January 27, 2022, the trial court scheduled a jury trial for March 28, 2022. (*Id.* at PageID 215). From there, all delays in getting to trial are attributable to Mr. Brooks and his counsel. *See Vermont v. Brillon,* 556 U.S. 81, 90-91 (2009).

- On March 24, 2022, defense counsel requested the trial be rescheduled for May 16, 2022, citing discovery issues. (*Id.* at PageID 74).

- On April 6, defense counsel moved to dismiss the indictment for lacking probable cause that the offenses occurred. (*Id.* at PageID 79).

- On May 4, the trial court granted trial counsel's motion to withdraw and appointed new counsel for Mr. Brooks. (ECF #8-1 at PageID 217).

- On May 12, newly appointed counsel moved for a continuance to prepare for trial. (*Id.* at PageID 88). The trial court granted the continuance and rescheduled trial for July 18, 2022. (*Id.* at PageID 93).

- On May 23, the trial court received Mr. Brooks' pro se motion to dismiss on speedy trial grounds. (*Id.* at PageID 85).

- On June 9, Mr. Brooks moved to represent himself. (*Id.* at PageID 90). Defense counsel then filed a motion to dismiss on speedy trial grounds,

alleging Mr. Brooks was entitled to the triple-count provision. (*Id.* at PageID 95).

- On July 15, 2022, at a hearing to address Mr. Brooks' motion to represent himself and the motion to dismiss, Mr. Brooks withdrew his request to represent himself and the trial court determined Mr. Brooks was not entitled to the triple-count provision because of the holder out of a different court. (*Id.* at PageID 99).

Because Mr. Brooks does not allege and it does not appear that the government acted in bad faith, and because the delays in this case were caused in part by Mr. Brooks' own motions, the government was not more to blame than Mr. Brooks for the delay in bringing him to trial. *See Bass,* 460 F.3d at 837.

**Assertion of the Right to Speedy Trial.** The third factor contemplates whether and how a defendant asserts his right. *Barker,* 407 U.S. at 531. A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.,* 407 U.S. at 531-32. Mr. Brooks' filed a pro se motion to dismiss on speedy trial grounds in May 2022 and counsel filed a second motion on the same grounds in June. (ECF #8-1 at PageID 85, 95). This factor favors Mr. Brooks.

**Prejudice from the Delay.** The last factor for consideration is whether Mr. Brooks was prejudiced by the delay. When the delay is lengthy and attributable to bad faith by the government, no showing of prejudice is required, but when the government used reasonable diligence to pursue a defendant, the defendant must show that the delay caused "actual prejudice" to his defense. *See Doggett,* 505 U.S. at 657. Here, there is no indication of bad faith by the government, so Mr. Brooks must show actual prejudice. Prejudice is evaluated with respect to the three purposes of the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will

20

be impaired." *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Mr. Brooks has not alleged prejudice in any form and any prejudice that can be gleaned from the record is minimal at most. He was prejudiced to some extent because he lived under a cloud of suspicion and was held in jail in lieu of bail for a little more than eight months, but he does not assert that potential witnesses died or became unavailable, physical evidence was lost or destroyed, or that the delay hindered his defense. This factor weighs in favor of the State.

On balance, the *Barker* factors show that Mr. Brooks has not suffered a violation of the Sixth Amendment right to a speedy trial. There is no evidence the government unreasonably delayed the case or intended to hamper Mr. Brooks' defense, Mr. Brooks and his counsel contributed to the delay, and he has not shown he was actually prejudiced by the delay. As such, he has failed to show the Fifth District unreasonably applied federal law. Therefore, I recommend the District Court **DENY** Ground One as without merit.

**B.     Ground Two is not cognizable because the state court's application of Ohio's speedy trial statute was not a denial of fundamental fairness.**

In Ground Two, Mr. Brooks contends the trial court violated his federal right to due process when it did not "follow the plain language of [Ohio's] speedy trial statute." (ECF #1 at PageID 7). In the Traverse, he does little to elaborate on this argument except to say that "the results of these proceedings [were] 'fundamentally unfair and unreliable.'" (ECF #11 at PageID 298).

A claim based solely on an error of state law cannot be addressed through the federal habeas process. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Hutchison v. Marshall,* 744 F.2d 44, 46-47 (6th Cir. 1984), *cert. denied,* 469 U.S. 1221 (1985). In fact, even if it could be said that

the state court's interpretation is wrong, "it has long been recognized that 'a mere error of state law' is not a denial of due process." *Engle,* 456 U.S. at 121 n.21.

In such cases, federal habeas relief is not warranted except where the petitioner shows that a state court's error in interpreting or applying its own law has rendered the trial so fundamentally unfair as to deprive the petitioner of due process. *See Estelle,* 502 U.S. at 67-68. The fundamental fairness doctrine is rooted in the belief that a "fair trial in a fair tribunal is a basic requirement of due process." *Hutchison,* 744 F.2d at 47 (citing *In re Murchison,* 349 U.S. 133, 136 (1955)). Ohio's speedy trial statute relates to the fairness of pretrial detention, not to the fairness of the trial itself. *Norris,* 146 F.3d at 329; *see also Hutchison,* 744 F.2d at 47 (fundamental fairness has little application in pretrial proceedings and application is limited to events or circumstances that affect or tend to affect the fairness of the trial). As such, Mr. Brooks cannot show that the trial court's decision would tend to have any unfair effect on the trial. Therefore, I recommend the District Court **DENY** Ground Two as not cognizable.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying

22

constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not needed to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 332, 337 (2003).

Mr. Brooks has not demonstrated that jurists of reason would find it debatable whether his petition states a valid claim of the denial of his constitutional rights. Therefore, I recommend the District Court **DENY** Mr. Brooks a COA as to any ground.

## CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DENY** Ground One as without merit, **DISMISS** Ground Two as not cognizable, and **DISMISS** the petition. I further recommend the District Court **DENY** a certificate of appealability.

Dated: June 23, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**A party must serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge within 14 days after being served with a copy of this Report and Recommendation.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). The district judge will review properly asserted objections de novo.**

**If a party does not file objections within the specified time, it may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district**

judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).